**STATE of Missouri, Respondent**

v.

**Michelle INGRAM, Appellant.**

**No. WD 67787.**

Missouri Court of Appeals, Western District.

April 15, 2008.

■

Margaret Mueller Johnston, Columbia, MO, for appellant.

Shaun J. Mackelprang, Jefferson City, MO, for respondent.

Before HOLLIGER, P.J., LOWENSTEIN and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

Michele Ingram appeals her conviction, after a jury trial, of possession of a controlled substance in violation of Section 195.202 [1] for which she received a term of five years. Ingram raises two points of error. In her first claim of error, Ingram argues the evidence adduced at trial was insufficient to sustain the conviction. In her second claim, she asserts the trial court erred in failing to intervene *sua sponte* when the State misstated the law in closing argument.

Where a challenge to the sufficiency of the evidence is raised, this court reviews the record to determine whether "sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable

---

1. Statutory references are to RSMo (2000) unless otherwise noted.

doubt." *State v. Chavez*, 128 S.W.3d 569, 573 (Mo.App.2004). The evidence and inferences therefrom are viewed in a light favorable to the State, and all evidence and inferences to the contrary are discarded. *State v. Driskell*, 167 S.W.3d 267, 268 (Mo. App.2005).

The evidence, viewed in a light most favorable to the State, established that, on the evening of May 14, 2005, Ingram, who lived in Kansas City, was driving an acquaintance, Kim Washington,[2] from Kansas City to an apartment in Platte City. At 9:52 pm, Officer Crum of the Kansas City, Missouri, Police Department, observed a red Ford Taurus driven by Ingram straddle two lanes on Prairie View Road while traveling at 10 miles per hour. The officer noted, additionally, that the car did not have a front license plate. He pulled in behind Ingram and activated his lights. Ingram pulled over into the parking lot of an apartment complex a half block away.

Ingram rolled down her window when the officer approached. Officer Crum asked Ingram if the car was hers, to which she replied that it was. She told the officer that she had outstanding warrants. The officer returned to his car and called for another police car. Twenty minutes later, after the second car arrived, Officer Crum returned to Ingram's car and arrested passenger Washington for outstanding warrants. He placed Washington in handcuffs and took her to the paddy wagon. Washington asked the officer to retrieve her purse and give it to a friend who lived in the apartment complex. The Officer Crum returned to Ingram's car and asked Ingram to hand him Washington's purse. Ingram picked up the contents of the purse that were scattered on the passenger side floor, placed them in the purse, and handed the purse to the officer through the driver's window. The officer then asked Ingram to exit the car. She was then searched, placed in handcuffs, and taken to the paddy wagon.

While Officer Crum was securing Ingram, a second police officer, Officer Gormant, began searching inside the car with a flashlight. The car was dirty and full of trash. Officer Crum did not directly observe whether Gormant recovered anything from the car. When Officer Crum returned to Ingram's car, he observed a small, pebble-like object on the driver's seat. He recovered the small rock as evidence.

Ingram and Washington were both booked for outstanding warrants. Two rocks of crack cocaine were recovered from Washington's purse—one was in a cigarette case and the other in a cylinder attached to a key ring. The pebble-like object recovered from Ingram's seat later proved to be a .07 rock of crack cocaine with a street value of approximately $10.00. The size of the rock was likened to a piece of aquarium gravel. No other drug paraphernalia was recovered from the car or Ingram's person.

The next morning, Ingram was questioned by Detective Yale Acton of the KCPD Drug Enforcement Unit Administrative Squad. Ingram told Acton that she believed she had been arrested for outstanding traffic warrants. She told him, additionally, that she did not own the car but that she drove it. She denied that she had any drugs on her at the time of her arrest and told the detective that had she known that a small rock of crack cocaine was in the car, she would have destroyed it during the twenty minutes she waited in the car while the second police car was called.

---

**2.** The record refers to Kim Washington by that name and an alias, Kim Gonzalez.

At trial, the State presented the testimony of Officer Crum, Detective Acton, and the criminalist who tested the small rock and identified it as .07 grams of crack cocaine. Ingram testified in her own defense and admitted that she had a previous drug conviction for which she received two years probation and was ordered to drug treatment. She testified that she was incarcerated for sixty days when her probation was revoked for failure to report.

After the close of the evidence, the court denied Ingram's motion for judgment of acquittal. The jury returned a verdict of guilty on the possession charge and Ingram was sentenced, as a prior offender, to a term of five years. The court denied Ingram's motion for acquittal or, in the alternative, a new trial.

■ Ingram first contends that the trial court erred in denying her motion for judgment of acquittal because the evidence was insufficient to prove, beyond a reasonable doubt, that Ingram knowingly possessed the rock of crack cocaine found in her vehicle.

Under Section 195.202.1, it is unlawful for a person to possess or have under his control a controlled substance. Such possession is found where:

[A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it.

§ 195.010(32)

Accordingly, to find Ingram in violation of Section 195.202.1, "the State had to prove that (1) [Ingram] knew the drugs were in the vehicle; (2)[she] exercised control over the drugs through actual or constructive possession." *Driskell*, 167 S.W.3d at 269. " 'Both possession and knowledge may be proved by circumstantial evidence.' " *State v. Mercado*, 887 S.W.2d 688, 691 (Mo.App.1994)(quoting *State v. Barber*, 635 S.W.2d 342, 343 (Mo. 1982)).

■ The State argues that Ingram had actual possession of the drugs because, although she did not "technically" own the car, she claimed ownership and treated it as her personal property. Moreover, the State contends, the drugs were found on the seat where Ingram had been sitting and over which she had exclusive control. However, "[p]roximity to the contraband alone fails to prove ownership." *State v. Bristol*, 98 S.W.3d 107, 111 (Mo.App.2003). The mere fact that Ingram was sitting on a small, pebble-sized rock of cocaine is not enough to establish that she was aware of the contraband. *Driskell*, 167 S.W.3d at 269. "Possession without knowledge of such possession is not possession in the legal sense of that word." *State v. Burns*, 457 S.W.2d 721, 724 (Mo. 1970).

The State relies on Ingram's statement to Officer Crum that the Taurus was her vehicle to establish exclusive control. Ingram testified that the car was left by a neighbor who had died five years previous. The neighbor had left the car with the keys for her family to collect. When the car was left abandoned by the family, Ingram, along with others in the neighborhood began to use the car. The keys were left in the car, and if the car was available, Ingram would make use of it. The State did not prove exclusive control by other evidence such as showing that the vehicle was titled in Ingram's name or that she licensed the vehicle. As the evidence at

trial did not establish that Ingram had exclusive control of the car, it was insufficient to show actual possession and the State was required to show that Ingram had constructive possession of the cocaine.

 "Constructive possession arises when additional facts buttress an inference of the defendant's knowledge of the presence of a controlled substance." *Driskell,* 167 S.W.3d at 269. "In cases involving joint control of an automobile, a criminal defendant is only deemed to have possession and control where sufficient additional evidence connects him to the controlled substance." *Chavez,* 128 S.W.3d at 574. Such additional evidence buttressing the inference of possession may include " 'nervousness exhibited during the search of the area, the subject of the controversy in plain view, commingling of the controlled substance with the defendant's personal belongings, and the conduct and statements of the accused.' " *Id.*(quoting *State v. Johnson,* 81 S.W.3d 212, 215 (Mo.App. S.D.2002)). " 'The totality of the circumstances is considered in determining whether sufficient additional incriminating circumstances have been proved.' " *Id.*

Ingram was sitting in the car where the rock of cocaine was found. Ingram was the driver, but not the owner, of the vehicle and did not have exclusive control of the premises where the drugs were found. Because there was shared control and access to the vehicle, additional evidence must have been adduced to connect Ingram with the drugs. *Driskell,* 167 S.W.3d at 269.

The State contends that the location of the drugs alone was sufficient to establish the additional facts to connect Ingram to the cocaine. The State argues that the drugs were found in the *center* of the seat where Ingram was sitting and no one else had access to that location except Ingram. However, that the drugs were located in the center of the seat was never established by evidence at trial. When the State attempted to make such an argument, the court sustained Ingram's objection that the State was arguing facts not in evidence. Although Officer Crum testified that, when he returned to the vehicle after securing Ingram in the paddy wagon, he found the small rock of cocaine in Ingram's seat, Officer Crum did not observe, and could not, therefore, testify whether the drugs had been on the seat when Ingram exited the vehicle. While Officer Crum was securing Ingram, Officer Gormant was searching the vehicle. Officer Crum, whose back was to the vehicle, did not observe Officer Gormant during the search. Officer Gormant did not testify; therefore, the record is bare as to what, if anything, he found in the vehicle or whether the drugs were on the seat when Ingram exited the vehicle. Without establishing Officer Gormant's actions, the evidence was insufficient to establish that the rock of cocaine was, in fact, under Ingram while she was in the car.

Nor does the record reflect evidence that Ingram exhibited any marked nervousness or made any incriminating statements. The drugs were not in plain sight when Ingram was in the car or commingled with Ingram's personal possessions. The State did not adduce any evidence of Ingram's conduct or statements sufficient to buttress the inference of possession and, therefore, the State failed to establish additional evidence to link Ingram to the drugs.

The evidence was insufficient to prove beyond a reasonable doubt that Ingram had actual or constructive possession of the controlled substances in violation of Section 195.202.1. Accordingly, the circuit court erred in denying the motions for judgment of acquittal. In that Ingram's first point is dispositive, the second point is

disregarded. The judgment of conviction is reversed.

All concur.